IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

STEPHANIE MILLS, and )
      CJM LLC. )
             Plaintiffs, )
)
v. ) CASE NO:. 24-262
)
TONY HARRIS, A/K/A AMP HARRIS d/b/a. )
AMP HARRIS PRODUCTIONS, INC. )
)
             Defendant )

## COMPLAINT AND JURY DEMAND

The plaintiff(s), Stephanie Mills and CJM, LLC (referred to as 'Mills' or 'CJM'), file this her Complaint for contract enforcement, breach of contract, debt collection, and injunctive relief, against Defendant Tony Harris a/k/a Amp Harris & d/b/a Amp Harris Productions, Inc. ('Harris').

### I. NATURE OF ACTION

1. Stephanie Mills ("Mills" or "Artist") is a Grammy-winning singer and a record-setting artist. CJM, LLC is Mills' personal production company that she uses as her agency to facilitate bookings and other business-related activities.

2. Tony "Amp" Harris ("Harris" or "Manager") was the booking manager for Stephanie Mills for under a decade. Amp Harris was the business representative to Stephanie Mills. Part of Mr. Harris' job responsibilities was to negotiate contracts on behalf of Stephanie Mills.

3. Mills and Harris had an oral agreement to give Harris 10% of the artist's purse. This oral agreement was enforceable and used for multiple years of services and numerous contracts.=

4. The artist and manager mutually agreed that the entirety of contracts would be deposited into the artist's business account. The only exception to the deposit was Harris' 10% manager's fees.

5. This dispute arises from the actions or inactions of Harris. It is alleged that Harris unilaterally increased his 10% manager's fees and, as a result, deprived Stephanie Mills of the generated income she was entitled to.

6. When Harris sent the negotiated contracts to the agents/lawyers, it is believed that Harris violated the terms of the contract between Mills and Harris by stipulating a higher percentage with the agent.

7. The agents are designated to be the neutral third party between the artist and manager. The promoter or venue solicits services from the artist. The artist manager is contacted to agree on dates, price, and logistics. Once the terms of the contracts are mutually agreed upon, the contract and payments are sent to the agents. The agents distribute the funds to the artist, manager, and staff.

8. It is alleged that the agents were not privy to the oral agreement between Mills and Harris.

9. Simply put, due to the unfamiliarity of the agents, Harris likely made claims of an increased percentage to receive increased payments.

10. It is alleged that not only did Harris' contracts with the agents increase his percentage, but he also kept Mills' bonus fees and travel monies as well.

## II. PARTIES, JURISDICTION, AND VENUE

11. Stephanie Mills and CJM, LLC, are a corporation with its principal place of business in Charlotte, North Carolina.

12. Tony "Amp" Harris is a U.S. citizen who, upon information and belief, resides in Indiana.

13. The matter in controversy exceeds $75,000, exclusive of interest and costs, as specified by 28 U.S.C. §1332.

14. Venue is proper in the Court pursuant to 28 U.S.C. §1391(d) because Harris resides in the Southern District of Indiana.

15. Furthermore, venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Indiana.

## III. <u>FACTUAL ALLEGATIONS</u>

16. During the infancy of their agreement (between 'Mills' and 'Harris'), both parties orally agreed to Mr. Harris receiving a 10% manager's fee. The 10% was to come from the artist's purse per show. Despite the agreement being oral, this contract was enforceable.

17. The contract's terms and conditions are valid and legally enforceable. The contract must include essential elements such as offer, acceptance, consideration, and a 'meeting of the minds' (mutuality). The oral agreement must not violate any laws or regulations that prohibit oral contracts, such as those falling under the Indiana Statute of Frauds, which requires certain contracts to be in writing.

### A. ENFORCEABILITY

    a. This contract is enforceable because it does not violate the Indiana Statute of Frauds law.

    b. Generally, the Indiana statute of frauds prohibits a party from bringing a lawsuit unless the agreement is: (1) in writing; and (2) signed by the accused party. It applies to the following kinds of claims:

        i. Actions involving any contract for the sale of land;

        ii. Actions charging a person with responsibility for the debt or default of another;

        iii. Actions involving activities that are not intended to be completed within one year of the agreement;

        iv. Actions charging an executor or administrator for damages out of the executor's or administrator's own estate; and

        v. The sale of goods at a price of more than $500.

    c. Under Indiana Code §32-21-1-1, this contract does not apply to a lease for a term of not more than three (3) years (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing

and signed by the party against whom the action is brought or by the party's authorized agent. The subsection, of §32-21-1-1, are not applicable to this contract.

d. Under Ind. Code § 32-21-1-2, The consideration that is the basis of a promise, contract, or agreement described in section 1 of this chapter does not need to be in writing but may be proved.

e. The consideration has been proven countless times by the completion of each performance and payment issued by the Agent(s) to the artist and manager.

## B. FACTS

18. The nucleus of this issue can be sought through discovery. The agents are designed to be the neutral third party between the artist and manager. The promoter or venue solicits services from the artist. The artist manager is contacted to agree on dates, price, and logistics. Once the terms of the contracts are mutually agreed upon, the contract and payments are sent to the agents. The agents distribute the funds to the artist, manager, and staff.

a. More importantly, the agents receive payment from the venue or promoter. Hence, the agents issue payments among the parties, specifically to the artist and manager.

b. It is the Plaintiff's belief that Harris sent over a fraudulent contract to the agents.

c. Harris increased his percentage from 10% to a higher amount not agreed upon among the parties. The agents are where the deception would be sought through subpoena.

d. To date, Mills and Harris have used multiple agents to execute their contracts. Some of the agents include Be-Georgeous LLC, Universal Attractions, Wenig LaMonica Associates, Black Promoters' Collective (PBC).

e. These agents and others received a contract from Harris for monetary distribution. Within these contracts is where the theft would be found. It is believed that Harris increased his percentage and allocated bonuses and other monetary values to himself.

f. Over the course of 10 years of services and countless shows, the monetary value obtained by Harris's deception is near the four-hundred-thousand-dollar range.

## IV. CAUSES OF ACTION

19. Under Indiana State law, a person commits theft by intentionally exerting unauthorized control over another's property with the intent of depriving that person of their property or its use. Thefts have been defined as the taking, obtaining, concealing, or transferring of property: without the property owner's consent through means of deceit or threats, or by misappropriating the property such as embezzlement.

20. Under Indiana Code § 35-31.5-2-253 (2022), Sec. 253. (a) Except as provided in subsection (c), "property" means anything of value. The term includes: (1) a gain or advantage or anything that might reasonably be regarded as such by the beneficiary; (2) real property, personal property, money, labor, and services;

21. Under Indiana Criminal Code 35-43-5-4 Fraud, Sec. 4. (a) A person who, with the intent to obtain property or data, or an educational, governmental, or employment benefit to which the person is not entitled, knowingly or intentionally:

    a. (A) makes a false or misleading statement; or

    b. (B) creates a false impression in another person;

        i. (ii) creates a false or misleading impression in a third person;

22. It is alleged that Mr. Harris intentionally altered the contract with their agents to receive an amount higher than the 10% purse agreed upon with Ms. Mills. Mr. Harris had no authority to alter any previous agreement approved by Ms. Mills. The unauthorized increase was intentionally done to deprive Ms. Mills of the hard work, education, and financial award Ms. Mills was entitled to

## V. CONCLUSION

23. This matter stems from the greediness of Mr. Harris. There hasn't been an instance where Mr. Harris wasn't adequately compensated for the work he put in. Ms. Mills was the performer. The audience, fans, and promoters requested Ms. Mills' performances. Those same promoters still seek

Ms. Mills' talents to this day. Meaning, no one booked a show due to Mr. Harris. Hence, there was no reasonable, calculable reason why Mr. Harris allegedly increased his fees for increased compensation. Ms. Mills is seeking a return of $500,000 of misappropriated funds. Ms. Mills is also seeking $200,000 of punitive damages.

**RESPECTFULLY SUBMITTED**, THIS, the 8th day of February, 2023.

STEPHANIE MILLS, and
CJM LLC | PLAINTIFF

BY: /S/ Jarrod D. Mumford
JARROD D. MUMFORD (MSB#105268)
THE JARROD MUMFORD LAW FIRM, LLC
736 N. Congress Street
Jackson, Mississippi 39202
T. (601)573-7763
F. (601)265-4700
JARROD@THEJARRODMUMFORDLAWFIRM.COM
ATTORNEY FOR THE PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on February 8, 2024, I filed the foregoing using the Court's CM/ECF system, through which parties and counsel may obtain a copy of the same

THIS the 8th day of February 2023

/S/*JARROD D. MUMFORD*
JARROD D. MUMFORD